UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

------------------------------------ :
MATTHEW S. WOLF, on behalf of   :
himself and all other similarly :
situated,                       :
                                :       Civil Action No.
              Plaintiff,        :       10-cv-3338 (NLH)(KMW)
                                :
       v.                       :       **OPINION**
                                :
NISSAN MOTOR ACCEPTANCE         :
CORPORATION,                    :
                                :
              Defendant.        :
------------------------------------ :

**APPEARANCES**:

Michael John DeBenedictis, Esquire
DeBenedictis & DeBenedictis L.L.C.
20 Brace Road
Suite 350
Cherry Hill, N.J. 08034
and
Thomas T. Booth, Jr., Esquire
Law Offices of Thomas T. Booth, Jr., L.L.C.
129 W. Evesham Road
Voorhees, N.J. 08043
*Attorneys for Plaintiff Matthew S. Wolf*

William H. Grae, Esquire
The Chartwell Law Offices, L.L.P.
75 Main Street
Suite 201
Millburn, N.J. 07041
*Attorney for Defendant Nissan Motor Acceptance Corporation*

**HILLMAN, District Judge**

        Plaintiff, Matthew S. Wolf, has brought a putative class

action suit against Defendant, Nissan Motor Acceptance

Corporation ("Nissan"),[1] alleging, *inter alia*, violations to the Servicemembers Civil Relief Act, 50 U.S.C. App. §§ 501 *et seq.* (or, "SCRA").  Nissan moves to dismiss or stay Wolf's claims and compel arbitration, based on a purported arbitration provision agreed upon by the parties.

For the reasons expressed below, Nissan's Motion to Dismiss or Stay is granted.

## I.    JURISDICTION

The Court may exercise jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

## II.   BACKGROUND

Matthew S. Wolf is a captain in the Judge Advocate General's Corps of the United States Army Reserves.  On or around November 25, 2006, Wolf entered into an agreement to lease a 2007 Nissan Infiniti G35 Sedan for thirty-nine months.  Among other things, the lease contained an arbitration clause mandating that all claims are subject to arbitration.

At the inception of his lease, Wolf paid $595 in

---

[1] Though Wolf names as a defendant the Nissan Motor Acceptance Corporation, the bulk of his allegations involve an entity known as Nissan Infiniti Leasing.  The Court will refer to the defendant as "Nissan," recognizing that the entities in this case are sufficiently related to one another as to constitute a single defendant for purposes of this matter and that the outcome is the same regardless of which entity is specifically named.

2

"capitalized cost reduction" ("CCR"), an advance toward the lease's rent.  He also prepaid other items for which, alternatively, he could have paid on a monthly basis.  During the life of the lease, however, Wolf entered into active military service.  On or around October 30, 2007, he returned his leased vehicle to Nissan.  Moreover, Wolf invoked the SCRA.  According to Wolf's complaint, the SCRA entitles military service members, like himself, to a prorated refund of lease payments made in advance.  Despite Wolf's invocation of the SCRA and his provision of proper notices, Nissan refused to refund to Wolf any prorated CCR payments.

In June 2010, Wolf filed a putative class action suit against Nissan, alleging conversion and violation of the SCRA. Several months later, Nissan moved to dismiss or stay Wolf's claims and compel arbitration.

## III. DISCUSSION

### A. Standard for Motion to Dismiss

A motion to compel arbitration may properly be considered as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Palcko v. Airbourne Express, Inc., 372 F.3d 588, 597 (3d Cir. 2004); see also Nationwide Ins. Co. v. Patterson, 953 F.2d 44, 45 n.1 (3d Cir. 1991).  When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must

3

accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'" (citation omitted)).  First, under the Twombly/Iqbal standard, a "district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Id. at 211 (quoting Iqbal, 129 S. Ct. at 1950).  "[A] complaint must do more than allege the plaintiff's entitlement to relief."  Id.  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d

4

Cir. 2005).

Moreover, in ruling on a motion to dismiss, a court has
"'discretion to address evidence outside the complaint . . . .'"
CitiSteel USA, Inc. v. General Electric Co., 78 F. App'x 832, 835
(3d Cir. 2003) (quoting Pryor v. Nat'l Collegiate Athletic Ass'n,
288 F.3d 548, 559 (3d Cir. 2002)).  Thus, the court "'may
consider an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's
claims are based on the document.'"[2]  Id. (quoting PBGC v. White
Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

**B.    Arbitration Agreement**

Nissan argues that the parties entered into a broad, legally
binding arbitration agreement as part of their lease contract.
As such, Nissan asserts that Wolf's claims, as well as the issue
of arbitrability itself, must be arbitrated in accordance with
their agreement.  Further, Nissan defends the validity of the
class action waiver included in the parties' arbitration clause.

Wolf counters that his suit is on behalf of a specially
protected class, Reserve and National Guard members of the United
States Armed Forces, who before reporting for military duty are

_____

[2] To its motion, Nissan attaches a copy of the parties'
leasing agreement, including the arbitration clause at issue in
this case.  Wolf does not challenge the authenticity of that
document or Nissan's reliance on it.  On the contrary, Wolf
acknowledges the existence and relevancy of the agreement, if not
the validity of the arbitration clause itself.

afforded protection when resolving their civilian affairs by the
Servicemembers Civil Relief Act, 50 U.S.C. App. §§ 501 *et seq.*
The SCRA, Wolf surmises, nullifies the parties' arbitration
clause.  Moreover, Wolf posits that under New Jersey law, the
arbitration clause, specifically its class action waiver, are
unconscionable.  He also challenges Nissan's interpretation of
the arbitration clause and its conclusion that the pertinent
issues of arbitrability in this matter must be decided by an
arbitrator instead of this Court.

  "Under the [Federal Arbitration Act, or the] FAA,
arbitration agreements are enforceable to the same extent as
other contracts."  <u>Nino v. Jewelry Exch., Inc.</u>, 609 F.3d 191, 200
(3d Cir. 2010) (citation and internal quotation marks omitted).

> To this end, the FAA provides that arbitration
> agreements are "valid, irrevocable, and
> enforceable, save upon such grounds as exist
> at law or in equity for the revocation of any
> contract," 9 U.S.C. § 2, and it entitles any
> "party aggrieved by the alleged failure,
> neglect, or refusal of another to arbitrate
> under a written agreement for arbitration" to
> obtain a "[court] order directing that such
> arbitration proceed in the manner provided for
> in such agreement."  9 U.S.C. § 4[.]

<u>Puleo v. Chase Bank USA, N.A.</u>, 605 F.3d 172, 178 (3d Cir. 2010)
(en banc); <u>see also</u> <u>Nino</u>, 609 F.3d at 200 ("A party to a valid
and enforceable arbitration agreement is entitled to a stay of
federal court proceedings pending arbitration as well as an order
compelling such arbitration." (citation and internal quotation

marks omitted)).  Thus, "[a] motion to compel arbitration calls
for a two step inquiry into (1) whether a valid agreement to
arbitrate exists and (2) whether the particular dispute falls
within the scope of that agreement."  Trippe Mfg. Co. v. Niles
Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005).  "When determining
both the existence and the scope of an arbitration agreement,
there is a presumption in favor of arbitrability."  Id.

     To determine whether parties agreed to arbitrate, ordinary
state-law principles of contracts apply.  Kirleis v. Dickie,
McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009).
Accordingly, state law defenses to the validity and
enforceability of arbitration clauses, such as the defense of
unconscionability, also are applicable.  See Homa v. Am. Express
Co., 558 F.3d 225, 229 (3d Cir. 2009) (quoting Doctor's Assocs.,
Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996)); see also Parilla
v. IAP Worldwide Servs. VI, Inc., 368 F.3d 269, 276 (3d Cir.
2004).  "'Under New Jersey law, an enforceable contract is
created when two parties 'agree on essential terms and manifest
an intention to be bound by those terms.'"  DirecTech Del., Inc.
v. Allstar Satellite, Inc., 2010 U.S. Dist. LEXIS 44330, at *8
(D.N.J. May 6, 2010) (quoting Barak v. Obioha, 74 F. App'x 164,
166 (3d Cir. 2003)).

     In Section 29 of the parties' lease agreement, it states
"ARBITRATION CLAUSE –– IMPORTANT –– PLEASE REVIEW –– AFFECTS YOUR

7

LEGAL RIGHTS." (Def. Mot., Exh. A, § 29). The arbitration clause provides:

1.   EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE, EXCEPT AS STATED BELOW, BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL

2.   IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR A CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS

3.   DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION

Except as otherwise stated below, any claim or dispute, whether in contract, tort, statute, or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute) between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. The claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action.

(Id.).

     With respect to the arbitration clause, the parties first contest whether the issue of arbitrability -- specifically, the

8

unconscionability of the class action waiver provision -- must be decided by this Court or an arbitrator.  "'The question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'"  Puleo, 605 F.3d at 178 (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)).  For "a litigant seeking to prove that the parties intended for the arbitrator to decide questions of arbitrability," the burden has been described as "'onerous.'"  Id. at 187 (quoting Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 221 (3d Cir. 2007)).

Germane to this threshold inquiry, the parties' arbitration clause reads: "any claim or dispute, whether in contract, tort, statute, or otherwise (including the interpretation and scope of this clause, and *the arbitrability of the claim or dispute*) . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action."  (Def. Mot., Exh. A, § 29) (emphasis added).  Though the general breadth of this arbitration provision is indeed expansive, it lacks sufficient specificity and clarity required by law to enforce it for the purposes presented by Nissan in this case.  As Wolf points out, the arbitration provision entrusts an arbitrator with the authority to determine arbitrability as it relates to a "claim or dispute," but the provision does not specify or delineate what

9

that term encompasses.  Earlier therein, the same provision
identifies its scope as including "any claim or dispute," but
again, given the burden assigned to a proponent of an arbitration
clause under these circumstances and the presumption favoring
judicial determination of arbitrability, the arbitrability clause
must be clear, precise, and entirely unequivocal, free from
ambiguity or multiple interpretations.  Only by holding a
proponent of an arbitration clause to this strict standard will a
court ensure that both parties, including the opponent to the
arbitration clause, receive the benefit of their bargain and, in
accordance with their expectations, be compelled to do what they
have agreed to do.  See id. ("'[G]iven the principle that a party
can be forced to arbitrate only those issues it specifically has
agreed to submit to arbitration, one can understand why courts
might hesitate to interpret silence or ambiguity on the 'who
should decide arbitrability' point as giving the arbitrators that
power, for doing so might too often force unwilling parties to
arbitrate a matter they reasonably would have thought a judge,
not an arbitrator, would decide.'" (quoting First Options of
Chicago v. Kaplan, 514 U.S. 938, 945 (1995))).

       The Court is not convinced that the relevant portions of the
arbitration clause, without more, would sufficiently inform a
potential customer that even the validity of the arbitration
clause itself must be decided by an arbitrator, contrary to the

presumption favoring a court's involvement.  The arbitration clause, so broad and general in its import and susceptible to misunderstanding, could be read to suggest that only the arbitrability of the plaintiff's claim -- in this case, Wolf's claims under the SCRA and of conversion -- are subject to the arbitrator's review, and not the arbitrability of the clause's own validity and reasonableness.  Absent any language pertaining to the unconscionability, voidability, or enforceability of the arbitration clause itself, the Court is reluctant to force a plaintiff to arbitrate a matter that he reasonably may have assumed is reserved for a court's judgment.  Accordingly, the Court will consider Wolf's central challenges to the arbitration clause at issue.

First, Wolf argues that the purposes and policies underscoring the SCRA invalidate a class action waiver provision akin to the one contained in the parties' arbitration agreement. For this and other reasons, Wolf concludes that the arbitration clause is unconscionable.

The SCRA is intended "to provide for, strengthen, and expedite the national defense through protection extended by [the SCRA itself] to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation."  50 U.S.C. App. § 502(1).  Among the circumstances in which the SCRA protects eligible members of the

Armed Forces is when a service member terminates a motor vehicle lease.  See id. § 535.  In the event that a service member terminates a motor vehicle lease covered by the SCRA, "[r]ents or lease amounts paid in advance for a period after the effective date of the termination of the lease shall be refunded to the lessee by the lessor (or the lessor's assignee or the assignee's agent) within 30 days of the effective date of the termination of the lease."  Id. § 535(f).

Certainly, the SCRA aspires to free members of our Armed Forces from civilian obligations to the extent that those obligations may distract or interfere with our service members' military service and objectives.  When an individual or entity does impose undue hardship upon a service member in violation of the SCRA, there are remedies to be had.  However, the SCRA, by its own words and provisions, does not bar or otherwise invalidate a class action or arbitration waiver provision.  Wolf sensibly questions whether such a waiver imposes additional obligations or burdens upon a service member, but that legitimate concern does not graft another term or directive onto a clearly worded statute.  Wolf points to no section or subsection within the SCRA that precludes waivers of class-wide proceedings.  Absent direct authority of that kind, the Court cannot assume the SCRA modifies or nullifies a contractual agreement mutually adopted by private parties to the degree asserted by Wolf.  Nor

12

may the Court infer without warrant the SCRA's tacit supersession or predominance over the FAA, and the latter's policies favoring and promoting arbitration -- especially in light of the recent decision of the Supreme Court of the United States in AT&T Mobility L.L.C. v. Concepcion, 131 S. Ct. 1740 (2011), to be discussed *infra*.

Further, Wolf highlights Section 517 of the SCRA to suggest that any waiver to his statutorily prescribed protections must comport with the particular requirements governing waivers as articulated in that section.[3]  But the class action waiver does

---

[3] Section 517 reads, in part:

> (a) In general.  A servicemember may waive any of the rights and protections provided by this Act.  Any such waiver that applies to an action listed in subsection (b) of this section is effective only if it is in writing and is executed as an instrument separate from the obligation or liability to which it applies.  In the case of a waiver that permits an action described in subsection (b), the waiver is effective only if made pursuant to a written agreement of the parties that is executed during or after the servicemember's period of military service.  The written agreement shall specify the legal instrument to which the waiver applies and, if the servicemember is not a party to that instrument, the servicemember concerned.

> (b) Actions requiring waivers in writing.  The requirement in subsection (a) for a written waiver applies to the following:
>     (1) The modification, termination, or cancellation of --
>         (A) a contract, lease, or bailment; or

not deprive Wolf of any SCRA rights or privileges, at least not as identified by Wolf in his opposition.  Should the SCRA guarantee service members the right to a class-wide proceeding to vindicate their statutory benefits, then that has not been made apparent to the Court.  The SCRA protects service members in certain dealings with motor vehicle leases, and private contracts contravening those protections may have to succumb to the federal statute.  But there is no indication that the SCRA protects service members from class action or arbitration waivers to which they assented.

Apart from the SCRA, Wolf also contends that the arbitration clause is unconscionable under New Jersey law.  To determine whether a contract of adhesion is unconscionable under New Jersey law, a court, on a case-by-case basis, looks not only to "the take-it-or-leave it nature or the standardized form of the document but also to (1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of

---

(B)  an  obligation  secured  by  a mortgage, trust, deed, lien, or other security in the nature of a mortgage.
    (2)    The    repossession,    retention, foreclosure,  sale,  forfeiture,  or  taking possession of property that --
        (A) is security for any obligation; or
        (B) was purchased or received under a contract, lease, or bailment.

50 U.S.C. App. § 517.

14

economic compulsion motivating the 'adhering' party, and (4) the public interests affected by the contract."  Muhammad v. Cty Bank of Rehoboth Beach, 912 A.2d 88, 97 (N.J. 2006) (citation and other internal quotation marks omitted).  However, the consideration and weighing of the first three factors of the analysis, as presented by Wolf, do not render the parties' arbitration clause or its class action waiver unconscionable.

The subject matter of the contract pertains to the leasing of a motor vehicle.  The relative bargaining positions of the parties favor Nissan, who presumably presents to its potential customers standardized contracts of adhesion enabling them to either categorically accept or reject the terms of a lease.  Consequently, customers, like Wolf, may have no opportunity to negotiate or modify the terms of the deal.  But, such common circumstances in commercial transactions, alone, need not invalidate an otherwise legally enforceable contract.  Also, it is important to note that the plaintiff, Wolf, is an attorney who, presumably, is learned or familiar with contract law.  Furthermore, given that the lease is a contract of adhesion, there is some economic compulsion exerted upon Wolf, but he certainly was able to walk away from Nissan's offer to pursue a lease with another company.  Again, taken together, those factors may evince a degree of unconscionability, but do not render the arbitration clause legally invalid and unenforceable.

Perhaps in recognition of this, Wolf focuses on the fourth factor, the public interest, as the determinative factor. Indeed, Wolf relies on Muhammad v. County Bank of Rehoboth Beach in which the Supreme Court of New Jersey held that, due to the public interest associated with consumer protection laws, class arbitration waiver provisions are unconscionable when included in consumer contracts of adhesion that will often spawn disputes for small amounts of damages. Muhammad, 912 A.2d at 99-101; see also Homa, 558 F.3d at 230 (noting that under New Jersey contract law, "class action waiver becomes 'problematic when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages'" (quoting Muhammad, 912 A.2d at 99)). Drawing from Muhammad, Wolf believes the public policies implicated in this case should trump and render unconscionable the class action waiver in the parties' arbitration clause.

Though Wolf's argument and authority are persuasive, the Court must take note of the recent decision issued by the Supreme Court of the United States in AT&T Mobility L.L.C. v. Concepcion, 131 S. Ct. 1740 (2011). In that case, the Supreme Court addressed a California rule of law that -- like the New Jersey principles of contract articulated in Muhammad -- deemed as unconscionable class action and collective arbitration waivers in consumer contracts of adhesion in which the likely damages would

16

be predictably small.  Id. at 1746, 1750.  The Supreme Court held that the FAA, with its objective toward encouraging arbitration, preempted the California rule, because by invalidating portions of arbitration agreements and imposing class-wide proceedings where they otherwise have been waived, the California rule interferes with and stymies arbitration.  Id. at 1750-51, 1753.

Based on the United States Supreme Court's holding and reasoning in AT&T Mobility, the Court cannot find that any public interest articulated in this case, either in connection with the SCRA or New Jersey law, overrides the clear, unambiguous, and binding class action waiver included in the parties' arbitration agreement.  New Jersey precedent notwithstanding, the Court is bound by the controlling authority of the United States Supreme Court.

Lastly, Wolf asserts that the entire arbitration agreement is unconscionable on the basis of its fee-shifting provision and another provision related to the costs of appeals.  The fee-shifting provision states: "We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $1,500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion."  (Def. Mot., Exh. A, § 29).  Further, the appeals provision reads: "The appealing party requesting new arbitration shall be responsible for their filing fee and other

17

arbitration costs subject to a final determination by the
arbitrators of a fair apportionment of costs." (<u>Id.</u>).

In <u>Delta Funding Corporation v. Harris</u>, the Supreme Court of
New Jersey held that a cost-shifting provision that endows an
arbitrator with unfettered discretion to allocate the entire cost
of arbitration to a consumer is unconscionable, given its
potential "chilling effect" that may deter consumers from
pursuing their claims.  <u>Delta Funding Corp. v. Harris</u>, 912 A.2d
104, 112-13 (N.J. 2006); <u>see also</u> <u>Merrill, Lynch, Pierce, Fenner
& Smith, Inc. v. Clemente</u>, 272 F. App'x 174, 178 (3d Cir. 2008)
("In <u>Harris</u>, the Supreme Court of New Jersey held that, in a
contract of adhesion, a 'cost-shifting' provision that permits
the arbitrator to allocate the entire cost of arbitration to a
consumer would be unconscionable if the arbitrator interprets and
applies the provision in that manner." (citing <u>Delta Funding
Corp.</u>, 912 A.2d at 111-13)).  Likewise, the Supreme Court also
concluded that it is unconscionable to require a consumer to bear
the entire cost of appealing the arbitrator's decision even if
she were to prevail on appeal.  <u>Delta Funding Corp.</u>, 912 A.2d at
114.

In accordance with the principles enunciated in <u>Delta
Funding</u>, the cost-shifting provision and the provision pertaining
to the costs of appeals are unconscionable and unenforceable to
the extent they may be construed and applied to require Wolf to

shoulder the entire financial burden of the arbitration and, irrespective of the outcome, the appeal of his claims.  However, that narrow, unconscionable interpretation and application of those provisions do not invalidate the entire arbitration agreement.  Rather, based on the agreement's severability provision,[4] the unconscionable portions of the arbitration agreement -- should they be effectuated in an unconscionable manner -- may be severed and stricken, as necessary, from the remainder of the parties' agreement.

Therefore, the arbitration clause agreed upon by the parties remains valid.  For that reason and those stated above, Nissan's Motion to Dismiss or Stay is granted.  This case shall be stayed and the parties' dispute shall be referred to arbitration.

**IV.** **CONCLUSION**

For the foregoing reasons, Nissan's Motion to Dismiss or Stay is granted.  This matter shall be stayed and referred to arbitration.  An Order consistent with this Opinion will be entered.

Dated: June 22, 2011             /s/ NOEL L. HILLMAN
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

-----

[4] The parties' arbitration agreement features a severability provision, which reads: "If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable."  (Def. Motion, Exh. A, § 29).