UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

MATTHEW S. WOLF, on behalf of
himself and all others
similarly situated,                Civil No. 10-3338 (NLH/KMW)

       Plaintiff,
                                            **OPINION**
v.

NISSAN MOTOR ACCEPTANCE
CORPORATION,

       Defendant.
_____

**APPEARANCES:**

Michael John DeBenedictis, Esquire
DeBenedictus & DeBenedictis LLC
125 Kings Highway West
Haddonfield, New Jersey 08033

Thomas T. Booth, Jr., Esquire
Law Offices of Thomas T. Booth, Jr., LLC
129 W. Evesham Road
Voorhees, New Jersey 08043

    *Counsel for Plaintiff*

William H. Grae, Esquire
The Chartwell Law Offices, LLP
75 Main Street
Suite 201
Millburn, New Jersey 07041

    *Counsel for Defendant*

**HILLMAN, District Judge:**

    The Court previously entered an Order staying the instant proceedings and referring the matter to arbitration. Presently

1

before the Court is Plaintiff's letter motion [Doc. No. 27] seeking to lift the stay and reopen this case based upon the purported failure of Defendant, Nissan Motor Acceptance Corporation, to submit the proper arbitration fee, which resulted in the matter being withdrawn from arbitration. Defendant filed opposition to the letter motion, and Plaintiff has filed a reply. The Court has considered the submissions of the parties and decides this matter pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Plaintiff's motion will be denied.

I.   **JURISDICTION**

The Court exercises jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

II.  **BACKGROUND**

This case involves a putative class action suit in which Plaintiff alleges, inter alia, violations of the Servicemembers Civil Relief Act, 50 U.S.C. §§ 501 et seq. (hereafter, "SCRA"). In November 2006, Plaintiff entered into an agreement to lease a 2007 Nissan Infiniti G35 Sedan for thirty-nine months. (Op. [Doc. No. 15] 2, June 22, 2011.) At the inception of the lease, Plaintiff paid $595 in "Capitalized Cost Reduction" (hereafter, "CCR"), an advance toward the lease's rent. (Id. at 3.) He

2

also prepaid for other items which he could instead have paid on a monthly basis. (Id.) During the lease term, Plaintiff entered into active military service, returned the leased vehicle to Nissan, and invoked the SCRA. (Id.) Plaintiff contends in the complaint that the SCRA entitles military service members, like himself, to a prorated refund of lease payments made in advance. (Id.) Defendant, however, refused to refund to Plaintiff any prorated CCR payments. (Id.) Plaintiff then filed a putative class action in this Court. (Id.)

Based on an optional arbitration clause contained in the lease agreement, Defendant filed a motion to stay the instant proceedings and compel arbitration. In opposition to the motion, Plaintiff raised a number of challenges, including that the arbitration clause is unconscionable because it included a class action waiver.

On June 22, 2011, this Court entered an Opinion and Order granting Defendant's motion. The Court upheld the class action waiver provision in the arbitration clause, finding that the provision was not precluded either by the SCRA or New Jersey law. The Court did, however, strike two provisions in the arbitration clause concerning the payment of arbitration fees. Specifically, the arbitration clause contained a fee-shifting provision and an appeals provision which could be construed so as to require Plaintiff to shoulder the entire financial burden

3

of the arbitration and appeal of his claims, irrespective of the outcome. (Op. [Doc. No. 15] 18-19, June 22, 2011.) The Court thus severed these unconscionable provisions but nonetheless found the arbitration clause otherwise valid and enforceable. (Id. at 19.) As such, the Court stayed the case and referred the matter to arbitration. (Id.)[1]

On October 22, 2012, counsel for Defendant wrote to Plaintiff's counsel in an effort to initiate the arbitration process. Because the arbitration provision in the lease agreement provided Plaintiff an opportunity to choose the arbitration forum, defense counsel sought input as to whether Plaintiff preferred to arbitrate the matter through the American Arbitration Association (hereafter, "AAA"), the National Arbitration Forum, or JAMS. (Def.'s Ltr. Br. dated May 16, 2014 (hereafter, "Def.'s Ltr. Br.") [Doc. No. 30], Ex. A.) After receiving no response from Plaintiff, Defendant decided to submit the case to the AAA. (Decl. of James R. Bruinsma, Esq. (hereafter, "Bruinsma Decl.") [Doc. No. 30-1] ¶¶ 9-13.)

Before filing any papers with the AAA, however, counsel for Defendant represents that he obtained advice from the AAA as to

---

[1] Plaintiff subsequently filed a motion for reconsideration, which was denied by Opinion and Order dated March 29, 2012. Plaintiff then filed an appeal to the United States Court of Appeals for the Third Circuit, but the appeal was dismissed for lack of jurisdiction.

the appropriate method to initiate arbitration. (Id. ¶ 13.) According to counsel, he sought such advice because of the unusual procedural circumstance in that Defendant -- although filing the claim to initiate arbitration -- was not the party seeking payment and thus was not the "claimant." (Id.) Defense counsel was purportedly advised to utilize the AAA's standard form and attach thereto those documents that Defendant believed set forth the nature of the case and its status. (Id. ¶ 14.) In January 2013, Defendant completed the standard form and attached Plaintiff's complaint, this Court's Order referring the matter to arbitration, and the arbitration clause between the parties. (Def.'s Ltr. Br., Ex. B.) Defendant determined that the dollar amount of the claim would be $600, and that the arbitration fee would be $775 based upon the AAA fee schedule, which was the standard fee for claims up to $10,000. (Bruinsma Decl. ¶¶ 15-17.) Defendant submitted the $775 fee with the standard form.

By letter dated February 7, 2013, Defendant wrote to the AAA case manager advising that it should be designated as the "Respondent" in the proceeding rather than as the "Claimant" because it was not the party seeking payment. The letter specifically noted that "[t]his is not a claim by NMAC to collect a consumer's debt; rather, it is a claim by a consumer against NMAC for damages and other relief as outlined in his

5

complaint." (Def.'s Ltr. Br., Ex. C.) Defendant also requested through this letter an in-person hearing with an arbitrator. (Id.) The AAA sent an invoice for an additional $750, which was the flat rate due for compensation of an arbitrator for an in-person hearing. (Id., Ex. D.) Defendant paid the invoice in full. (Id.)

In March 2013, the AAA designated the Honorable Burrell Ives Humphreys (Retired) to serve as an arbitrator. A preliminary telephone conference was held on May 20, 2013, at which time Plaintiff was directed to submit his own Statement of Claim. (Pl.'s Ltr Br. [Doc. No. 35] 5, July 18, 2014; Bruinsma Decl. ¶¶ 28, 32.) Plaintiff submitted a Statement of Claim in June 2013. (Decl. of Michael J. DeBenedictis in Reply, Ex. G.) The Statement of Claim set forth not only Plaintiff's individual claims, but also contained several class action allegations. (See generally id.) Although Plaintiff's Statement of Claim acknowledged that "any claim proceeding in arbitration can only proceed on an individual basis" (id. ¶ 16), the Statement nonetheless included the class action allegations and set forth an "Amount in Controversy" of $2,100,000 in monetary damages based upon "putative class claims," with equitable and injunctive relief having a similar economic value. (Id. ¶ 26.) The Statement of Claim contains no estimate as to the value of Plaintiff's individual claims. (See id.) Defendant filed a

6

response to Plaintiff's Statement of Claim in July 2013, noting therein that "the parties' agreement provides that Claimant's claims may be arbitrated solely on an individual basis and not as a class action." (Def.'s Ltr. Br., Ex. F at ¶¶ 58-72.)

In October 2013, a new AAA case manager, Derek Coppola, sent an email to counsel with an attached invoice for $8,200. (Def.'s Ltr. Br., Ex. H.) The invoice was addressed to Plaintiff's counsel and was to be paid within fifteen days. (Id.) Plaintiff did not pay the fee. (Bruinsma Decl. ¶ 41.) Defense counsel represents that Mr. Coppola contacted him on November 14, 2013 because Mr. Coppola had been unable to contact Plaintiff's counsel. (Id.) According to defense counsel, Mr. Coppola inquired as to whether Plaintiff intended to pay the invoice. (Id.) Mr. Coppola purportedly stated during that conversation that the fee was assessed based on Plaintiff's $2.1 million monetary demand in his Statement of Claim. (Id. ¶ 42.) Defense counsel further represents that Mr. Coppola stated "'If [Plaintiff] wants to arbitrate a $2 million claim, he has to pay the fee first.'" (Id.)

The parties at that point became entrenched in their positions that neither was going to pay the $8,200 filing fee. On February 11, 2014, Mr. Coppola emailed counsel for the parties advising that Plaintiff's claim would be deemed withdrawn if the outstanding invoice was not paid by February

7

18, 2014.  (Bruinsma Decl. ¶ 45.)  Although the parties wrote to the AAA case manager arguing over who was responsible to pay the fee, no party ever asked the case manager to reconsider the fee. Most notably, it does not appear from the record that Plaintiff ever clarified to the case manager that the arbitration was based only on his individual claims, which were not within the range of $1,000,000 to $5,000,000 and did not require an $8,200 fee.  Defendant attempted to explain to the case manager that Plaintiff was improperly asserting a class claim, which generated an increased fee, but Defendant did not request that the case manager reduce the fee.  Rather, Defendant insisted that it had already paid the fees required to arbitrate Plaintiff's individual claim and that Plaintiff was responsible for any fees resulting from his class action allegations.

On March 7, 2014, after neither party paid the $8,200 filing fee, Mr. Coppola sent another email to counsel stating that "[t]he Association has been advised that Claimant has withdrawn its claim from arbitration."  (Grae Ltr. Br., Ex. J.) Defense counsel responded to clarify whether Plaintiff was the "Claimant," noting that Mr. Coppola's email "says the Claimant has withdrawn 'its' claim[.]"  (Id.)  The case manager confirmed that Plaintiff "withdrew his claim."  (Id.)

8

**III. DISCUSSION**

Section 2 of the Federal Arbitration Act (hereafter, "FAA") provides for enforcement of arbitration agreements in written contracts. 9 U.S.C. § 2. Pursuant to Section 4 of the FAA, a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Section 3 of the FAA states that a district court may stay the trial of a matter where the parties have agreed to arbitrate an issue, "provid[ed] the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Although the Court already stayed this matter so that the parties may proceed with arbitration, Plaintiff now asks the Court to lift the stay. Plaintiff contends in this regard that Defendant defaulted by failing to pay the filing fee to initiate arbitration, and consequently has purportedly waived its right to arbitrate Plaintiff's claims under Section 3 of the FAA.

In deciding whether Defendant defaulted in proceeding with the arbitration, the Court must determine whether Defendant was responsible for paying the $8,200 filing fee requested by the AAA. For the reasons discussed below, the Court finds that the AAA required Plaintiff to pay this filing fee, and therefore

9

Defendant's failure to pay the fee does not constitute a default in proceeding with arbitration.

The Court first rejects Plaintiff's contention that the AAA case manager required Defendant to pay the invoice for $8,200. Although the invoice was sent via email to defense counsel, both attorneys for Plaintiff were "cc:d" on the email and the invoice attached thereto is addressed to Plaintiff's counsel. The email itself states that it "acknowledge[s] receipt of a [sic] Claimant Matthew Wolf's Statement of Claimant" and that "the claim is not properly filed without the submission of the appropriate filing fee." (Def.'s Ltr. Br., Ex. H.) The email further states that "at this time we request that Claimant submit the appropriate filing fee in the amount of $8,200.00 . . . [.]" (Id.) The content of the email and the invoice attached thereto thus belie Plaintiff's assertion that Defendant was required by the AAA to pay the invoice.

Moreover, the Court notes that the AAA case manager assessed the $8,200 when Plaintiff filed a Statement of Claim containing class action allegations.[2] Plaintiff fought the class action issue before this Court and lost, both in connection with

---

[2] The Court notes that under AAA Rule R-53, "[t]he filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award."  AAA Rule R-53.

10

Defendant's motion to compel arbitration and Plaintiff's motion for reconsideration, and Plaintiff was unable to obtain relief from the Third Circuit. Despite this, Plaintiff proceeded to set forth class allegations in the Statement of Claim and sought $2.1 million in damages for the class claims.[3] Clearly, the $8,200 fee, which is the standard fee for claims between $1 million and $5 million, was predicated upon Plaintiff's assertion of class claims. It does not appear that Plaintiff ever attempted to clarify with the AAA case manager that the value of his individual claims did not warrant an $8,200 fee.

Whether the AAA case manager was correct in assessing a filing fee in the amount of $8,200 or in directing the invoice to Plaintiff is not for this Court to decide. "'‘[P]rocedural' questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an

---

[3] Plaintiff's counsel indicates that he was directed by the arbitrator to include in the Statement of Claim an estimate of the size of the class and the potential impact of equitable remedies in monetary terms. It is not clear to the Court why any class issues were raised and discussed with the arbitrator, when the Court had already ruled that the class action waiver provision in the arbitration agreement was valid and enforceable. Moreover, while Plaintiff submitted an estimate of the value of the class action claim, he did not submit an estimated value of his individual claim. In so doing, he placed the burden on the AAA case manager to sift through the allegations in his Statement of Claim to determine which claims were actually subject to arbitration to set the appropriate filing fee.

arbitrator, to decide." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)(quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-47, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964)). An arbitrator should decide whether a condition precedent to arbitrability, such as time limits, notice, laches, or estoppel, has been fulfilled. Id. at 85, 123 S. Ct. 588. At least one court has held that "questions related to the payment of fees . . . are for arbitrators to decide." Pre-Paid Legal Services, Inc. v. Cahill, No. 12-CV-346-JHP, 2014 WL 1514161, at *1 (E.D. Okla. Apr. 16, 2014).

In Lifescan, Inc. v. Premier Diabetic Services, Inc., 363 F.3d 1010 (9th Cir. 2004), the Ninth Circuit reversed the district court's order compelling a party to pay an arbitration fee when the arbitrator had required another party to pay such fee. The issue before the court was "[w]hat happens when a party to an arbitration is unable to pay its pro-rata share of the arbitration fees[.]" Lifescan, 363 F.3d at 1011. There, the parties had participated in AAA arbitration but, before the final hearing, one of the parties, Premier Diabetic Services, Inc., was unable to pay its pro-rata share of the arbitrators' estimated fees and costs for the remainder of the proceedings. Id. The arbitrator gave the other party, Lifescan, Inc., the option of advancing the fees owed by Premier, but Lifescan

12

refused. Id. The AAA declined to proceed and suspended the proceedings. Id. Lifescan then asked the district court to compel Premier to pay its pro-rata share of the fees, which request was granted by the district court. Id.

On appeal, the Ninth Circuit reversed the district court's decision, finding that the arbitrators acted within their discretion in requiring Lifescan to pay Premier's share of the arbitration fees. Id. at 1013. In so holding, the Ninth Circuit noted that the AAA rules provide the arbitrators with "the authority to apportion fees and expenses as appropriate." Id. at 1012. In particular, the Ninth Circuit noted that "[a]lthough the arbitrators originally requested an equal deposit from the parties, they changed their order when Premier informed them that it could not afford to pay." Id. While recognizing that the arbitrators' decision "may not be an ideal solution to the problem of a party's failure to pay its share of the fees, . . . it is well within the discretion of the arbitrators." Id.

Another Ninth Circuit decision relevant to the present case is Sink v. Aden Enterprises, Inc., 352 F.3d 1197 (9th Cir. 2003). In Sink, the district court stayed the plaintiff's lawsuit for breach of an employment contract and referred the matter to arbitration pursuant to an arbitration clause in the contract. Id. at 1198. The employment agreement required the

13

defendant, as the employer, to pay the costs of any arbitration arising from the employment relationship. Id. at n.1. The defendant-employer failed to pay the filing fee, and the arbitrator cancelled the arbitration due to non-payment of fees. Id. at 1199. The plaintiff then sought to lift the stay of proceedings in the district court, which request was granted. Id.

On appeal, the Ninth Circuit found that the defendant-employer defaulted in the arbitration. Id. Because the defendant was in default, the FAA no longer permitted a stay of the court proceedings in favor of arbitration and did not require the district court to order the parties to return to arbitration. Id. at 1201-02. The Ninth Circuit held "that a party to an arbitration agreement may not compel arbitration of claims under FAA § 4 where a prior default in arbitration of those claims precludes that party from obtaining a stay of litigation pending arbitration under § 3." Id. at 1201. In so holding, the Ninth Circuit noted that if the parties were required to return to arbitration, "[t]he same offending party could then default a second time, and the prejudiced party's sole remedy, again, would be another order compelling arbitration." Id. at 1201. "This cycle could continue, resulting in frustration of the aggrieved resolution of claims." Id.

The facts of this case fall neither squarely within <u>Lifescan</u> nor <u>Sink</u>.  <u>Lifescan</u> involved payment of fees associated with the arbitration hearing rather than the initial filing fee, but supports the notion that the Court cannot require one party to pay a fee when the arbitrator has required a different party to pay such fee.  <u>Sink</u> is more on point insofar as it involved the failure to pay the initial filing fee, but in that case the employer-defendant was clearly obligated by contract to pay the fee and failed to do so.[4]  There was no dispute as to the amount of the fee or any conduct by the plaintiff that generated an artificially-inflated fee.  Here, by contrast, Defendant paid the initial fee, and the arbitrator then required Plaintiff to pay a significantly increased fee as a result of Plaintiff's assertion of a class action claim in excess of $2 million.

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be

---

[4] Plaintiff also cites <u>Stowell v. Toll Brothers</u>, No. 06-cv-2103, 2007 WL 30316, at *1 (E.D. Pa. Jan. 4, 2007), for the proposition that a defendant's failure to pay an initial filing fee in arbitration constitutes default and, as such, is a waiver of the defendant's right to compel arbitration.  The relevant facts in <u>Stowell</u> were the same as those in <u>Sink</u>, because both cases involved a defendant who sought arbitration but then outright refused to pay an arbitration fee despite an obligation to do so.  Those cases are distinguishable from the present case because Defendant here paid the initial filing fee but refused to pay the additional fee invoiced to Plaintiff and generated when Plaintiff filed his Statement of Claim.

15

resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem. Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). There is a strong presumption against waiver of arbitration. See Sherrock Bros., Inc. v. DaimlerChrysler Motors Co., LLC, 260 F. App'x 497, 500 (3d Cir. 2008); Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 223 (3d Cir. 2007).

The Court recognizes, as discussed in Sink, that when the purpose of arbitration -- that is, to provide a cost-effective and efficient means of resolving a claim -- is thwarted by a party's failure to pay the required fees, the defaulting party should not be permitted to return to arbitration. But this is not a case where Plaintiff was held at the mercy of a non-paying party who merely sought to delay resolution of the claims at issue. Defendant paid a filing fee and completed the paperwork to initiate the arbitration. Plaintiff then failed to pay an $8,200 invoice directed to him based on the claim he filed with the AAA. The AAA ultimately found that Plaintiff waived his claim. Under these circumstances, the Court cannot conclude that it was Defendant's conduct that resulted in the case being removed from arbitration. As such, the Court does not find that Defendant defaulted in the arbitration proceedings so as to

overcome the strong federal policy favoring the enforcement of arbitration agreements.

In so finding, the Court notes Plaintiff's argument that Defendant has purportedly shifted the arbitration fees onto Plaintiff in contravention of this Court's ruling. The Court previously held that because the fee-shifting provision in the arbitration clause gave unfettered discretion to an arbitrator to allocate the entire cost of the arbitration to Plaintiff, such provision was unconscionable and unenforceable to the extent it "may be construed and applied to require [Plaintiff] to shoulder the entire financial burden of the arbitration . . . [.]" (Op. [Doc. No. 15] 18-19, June 22, 2011.) Here, however, Defendant paid the initial fees and there is no indication that Defendant ever asked Plaintiff to bear the entire financial burden of arbitration. Furthermore, there is no indication that the arbitrator has required Plaintiff to shoulder the entire financial burden, but has only required Plaintiff to pay a filing fee based upon a claim submitted by Plaintiff.

The Court also notes Plaintiff's argument that the "outcome determinative question" is whether the $775 fee submitted by Defendant was sufficient to submit all of Plaintiff's claims to arbitration. Plaintiff contends that Defendant should have checked the boxes on the initial filing form for injunctive and declaratory claims, which would have resulted in a filing fee of

17

$3,350.  Because Defendant only paid $775, Plaintiff argues that Defendant did not pay a filing fee sufficient to submit all of Plaintiff's claims to arbitration and has thus defaulted.

The Court will not predict whether the AAA case manager would have assessed a $3,350 fee if Defendant had checked different boxes on the filing form.  Plaintiff never asked the AAA case manager to reduce the fee to $3,350, the AAA never sought a filing fee in the amount of $3,350, Defendant was never invoiced for $3,350, and the case was not withdrawn from arbitration based upon the failure to pay a $3,350 filing fee.  The Court is thus unable to find Defendant in default for failing to pay a filing fee that Defendant was never asked to pay.

**IV.  CONCLUSION**

For the reasons set forth above, the Court denies Plaintiff's request to lift the stay entered on June 22, 2011 and directs the parties to return to arbitration.

An Order consistent with this Opinion will be entered.


                                        s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

Dated: February 20, 2015